WILLIAM W. HOYT v. FRANCIS NEWBOLD.

45 219
o63o 482
45 219
68 265

1. A person who absents himself from this state for seven successive years is presumed to be dead, and the party asserting that he is living must prove it.
2. After the presumption of death arises, the burthen of proof is on the party denying the death to show that the person is alive and to overcome the presumption by proof.
3. There should be something more than similarity of name to overcome the presumption of death raised by the statute.
4. The identity of the person should be proved.

---

In ejectment. On rule to show cause.

Argued at February Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and PARKER.

For the plaintiff, *King & Woodruff*.

For the defendant, *Geo. W. Hubbell*.

The opinion of the court was delivered by

PARKER, J. This action was brought to recover possession of the equal undivided one-seventh part of a lot of land, situated in the township of Kearny, in the county of Hudson.

In the year 1850, Abram Tuers, Sr., died intestate, seized of lands, of which the lot in controversy was a part. He left surviving him seven children, one of whom bore the name of his father.

In the year 1852, this son (Abraham Tuers, Jr.,) left the State of New Jersey for the avowed purpose of going to California. He never returned to this state. In the year 1862, application was made to the Orphans' Court of the county of Hudson, by William Tuers, one of the sons of Abram Tuers, Sr., for the appointment of commissioners to divide the real estate of which his father died seized. The application for partition set forth the names of the alleged tenants in common and claimed them to be the owners of said lands.

Abraham Tuers, Jr., having absented himself from the State of New Jersey for more than seven years, and not having been heard of within that period of time, the partition was made, on the presumption that he was dead, and the undivided one-seventh part of the lands to which Abraham Tuers, Jr., would have been entitled had he been living was set off to his children.

The commissioners made report of the partition, and on the 28th of February, 1863, the report (having been approved by the court) was confirmed.

On the 1st day of July, 1874, a deed was executed and delivered to the plaintiff by a person who signed his name Abraham A. Tuers. This deed stated that the grantor was formerly of the county of Morris, in the State of New Jersey, and then of the village of Diamond Springs, in the county of Eldorado, and State of California. It purported to convey all the real estate situated in the State of New Jersey which Abraham A. Tuers owned, or to which he had any right or claim, wherever the same was situated; and also the interest, right, title, claim and demand which the party of the first

part had and which he might thereafter have or be entitled to as one of the children and heirs-at-law of Abraham (sometimes called Abram) Tuers, late of Newark, in the State of New Jersey.

On the 15th day of August, 1874, another deed was executed to plaintiff by a person who signed his name Abraham Tuers. This deed stated that the grantor was sometimes called Abraham A. Tuers, and was of the county of Eldorado, in the State of California. This last-mentioned deed purported to convey to the plaintiff the lands of which the lot in question is a part, by a more particular description than was contained in the former deed, and in describing the same referred to the property as being lots numbered on maps accompanying the report of the commissioners appointed by the Orphans' Court of the county of Hudson and State of New Jersey, to make partition of the estate of Abraham Tuers, deceased. Under and by virtue of these deeds the plaintiff in this suit claims title to the equal undivided one-seventh part of the lot in controversy.

The defendant claims title to the lot under the partition proceedings. It is part of a tract set off by said commissioners to the children of Catharine Ward, deceased, (a daughter of Abram Tuers, Sr.,) and their right thereto became vested in the defendant (as is claimed by him) through several mesne conveyances.

The jury found a verdict for the plaintiff. A rule to show cause why the verdict should not be set aside and a verdict entered for defendant was allowed. The defendant assigned several reasons for setting aside the verdict, but it will not be necessary to consider more than one of them.

The statute of March 7th, 1797, declaring when the death of persons absenting themselves shall be presumed, (*Rev.*, p. 294,) provides that "Any person who shall remain beyond sea, or absent himself or herself from this state, or conceal himself or herself in this state for seven years successively, shall be presumed to be dead, in any case wherein his or her death shall come in question, unless proof be made that he or

she were alive within that time; but an estate recovered in any such case, if in a subsequent action or suit the person so presumed to be dead shall be proved to be living, shall be restored to him or her who shall have been evicted."

This statute declares that there shall be *presumption of the death* of a person who absents himself from this state for seven successive years, unless *it be proved* that he was living within that time; and *if it shall be proved* that he is living, his rights shall be restored.

The plaintiff insists that the burthen of proof is on the defendant to show that Abraham Tuers, Jr., was dead when the deeds to plaintiff were given. The language of the statute will not admit such construction. The presumption of death after continued absence of over seven years successively, *must be overcome by proof* that the person was living.

In 2 *Greenl. on Ev.*, § 278, the writer uses the following language, viz.: "Some say that the existence of a person being once shown he is presumed to continue alive, and that the burthen of proof is on the party asserting the death. This presumption is held by the civilians to continue for a hundred years. It is, however, conceived that the period of continuance can justly be applied only until a contrary presumption is raised from the nature of the subject. It would surely be unreasonable to presume that an orange proved to have existed fresh ten years ago, is still sound, a contrary presumption having arisen from the ascertained average duration of that fruit in a sound state. But however this may be as a mere presumption of law, the rule is now settled for most judicial purposes that the presumption of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time they were last known to be living, after which the burthen of proof is devolved on the party asserting the life of the individual in question."

This period of seven years is the time fixed by statute when the presumption of death begins.

In *Wambaugh* v. *Schenck*, 1 *Penn.* 229, an action of dower had been brought and issue taken on the death of the hus-

band.   The husband left the country about seven years before, and there was no satisfactory evidence of his since being alive. The demandant relied on the presumption of his death raised by the statute.   The court said : " Proof being made that he has absented himself from the state for seven years, the statute attaching on that fact raises the presumption of his death, which, however, may be rebutted by proof of his having been alive within the seven years."

In *Smith* v. *Ex'rs of Smith*, 1 *Halst. Ch.* 484, the Chancellor said :  " The words of the statute and the reason of the thing require that unless proof be made that the person absenting himself has been heard from, the presumption of his death arises at the expiration of seven successive years of absence. The party seeking to avoid the presumption can do it only by showing that the absent person was alive within the seven years."

In the case of *Mooers* v. *Bunker*, 29 *N. H.* 420, 431, the court, in the opinion delivered, said :  " The first thing to be proved is that the plaintiff is seized of the share he claims in the real estate.   If his name be John Smith, or any of the common and frequently-recurring names, it would be at once apparent that to prove John Smith to be entitled is but one step to prove plaintiff's title ; the next step is to prove he is the same person.   If the question be raised, the jury is not at liberty to presume that a person, even of so peculiar a name as Timothy Mooers, is the same person as the man of the same name who is shown to be entitled to the estate."

The mere fact that deeds were signed in California, in 1874, by a person named Abraham A. Tuers, or using that name, does not prove that such person was the son of Abraham Tuers, Sr., or that he was then living, or that he signed the deeds.   There should be something more than similarity of name to overcome the presumption of death raised by the statute.   Some evidence should be produced that the person who signed the deeds was the same person who had an interest in the lands in question, beyond the mere identity of name.   The identity of the person should have been proved.

There is no such proof in this case. If the person who signed those deeds under which plaintiff claims was Abraham Tuers, the younger, who started for California in 1852, would it not have been easy to prove the fact? Many of his relatives and others who knew him in New Jersey are living, who could have described his personal appearance, and the testimony of the subscribing witnesses or of the notary public before whom the deeds were severally acknowledged might have been taken, as to the size, weight and apparent age and characteristics of the man who signed them, for the purpose of identification. Evidence might also have been taken as to the handwriting of the signature of the grantor. In this case there is no evidence of handwriting nor of personal appearance or characteristics to identify.

At the time of the partition of the real estate of Abram Tuers, Sr., his son, Abraham Tuers, had been absent from this state more than ten years, during which time he had not been heard of, nor is there proof in this cause that he has since been seen or heard from. He was regarded by the family as dead, and his widow married again. The only claim made by plaintiff to show that he is living, or was living at the time of the execution of said deeds, is the production of the deeds themselves, signed by the name Abraham A. Tuers and Abraham Tuers, respectively. This claim is of no avail unless followed by evidence to show that the person who executed the deeds is the Abraham Tuers who started for California in 1852.

There being an absence of such proof, the law raises the presumption that he is dead, which presumption has not been overcome by evidence.

The rule to show cause is made absolute, with costs, and verdict entered for defendant.